[Civ. No. 16131.   First Dist., Div. Two.   Mar. 10, 1955.]

AMERICAN TRUST COMPANY, as Executor, etc., Respondent, v. FRANK M. FITZMAURICE et al., Appellants.

Charles R. Collins for Appellants.

Fred A. Watkins for Respondent.

NOURSE, P. J.—Loraine Ward Temps instituted against her nephew Frank M. Fitzmaurice and his wife an action for a declaration that defendants held certain real and personal property which plaintiff had transferred to them in trust for plaintiff, and for an order that they reconvey said property to her. The property consisted of (1) certain shares of Transamerica Corporation and of Bank of America National Trust and Savings Association; (2) a note and deed of trust securing it, given by Thomas F. Fenton and wife for the balance of the purchase price of a parcel of improved real property sold to them by plaintiff, which note mentions defendant Frank M. Fitzmaurice as payee; (3) a parcel of improved real property on Funston Avenue in San Francisco, in which both plaintiff and defendants lived in separate apartments. Plaintiff alleged a confidential relationship with defendants, especially with her nephew, that the transfers were made at his instigation so that he would handle the property for her during her lifetime and pay her all the income, that he would reconvey to her on demand, and in case of her death retain what he had still under him, and that demand for a reconveyance was made and refused.

In their answer defendants admitted the confidential relationship and the agreement to pay to plaintiff during her lifetime all income and receipts from the property but denied the alleged trust and obligation to reconvey, taking the position that except for the retention of the right to income and receipts the transfer of the title (by way of gift) was absolute. In a cross-complaint defendant husband asked a declaration that he was a joint tenant with his aunt in some $55,000 of government bonds originally held by her but following her directions transferred into the names of herself or him and the certificates of which were kept in a safe deposit box taken

by both in their joint names, and that the court provide for sequestration of said bonds. During the trial it was also claimed by this cross-complainant that he had a joint tenancy interest in a bank account opened by Mrs. Temps in the joint names of herself and him. It was stipulated at the trial that this appellant never paid anything for the advantages he received.

As to the shares of stock and the note and deed of trust the court, sitting without a jury, held that no gift had been intended, that defendants held the title in trust and ordered him to reconvey to plaintiff. As to the real property on Funston Avenue, it was held that plaintiff had only retained a life estate in the flat she lived in and defendants were ordered to execute a deed conveying such life estate to her and providing that all real property taxes and repairs should be paid by defendants. A court commissioner was appointed to execute the transfer ordered if defendants failed to do so. It was further adjudged that cross-complainants had no interest in the bonds and bank account in the joint names of his aunt and himself. Defendants and cross-complainants appeal.

Pending the appeal Mrs. Temps died and the American Trust Company as the executor of her will was substituted for her.

Appellants' only contention is that the evidence does not support the findings and decision insofar as adverse to them. Except as to one minor point the contention is without merit. The essential question was whether in the different transactions the intention was a transfer in trust terminable on demand during Mrs. Temps' lifetime or a present gift with retention of a right to the income for life. In this respect the evidence was in sharp conflict. Respondent testified that at the time of the trial (May, 1953) she was 75 years old and that for 15 years she had been in bad health. At the end of 1948 or the beginning of 1949, after the Funston Avenue property had been deeded to appellants, she had a conversation with appellant Frank about her properties in connection with her care in her old age and the possibility of her death in not too long a time. Appellant wanted her to give him everything, her stocks and bonds. If he had not told her he would return the property she would of course not have transferred it to him. She would not have given him anything. She might still live, a sick woman, 10 more years. She gave him the key of the safe deposit box for awhile, but when she found out that he was getting in the box clandestinely, she asked for

the key and he gave it back. When she asked him to return her securities he said that he would not give them back, he had changed his mind. She considered the property still hers.

Fred A. Watkins, attorney of respondent, testified that he had had a conference with Frank about the return of the stock and the note and that at the end of said conference he said: " 'I admit I told her I would give them back to her when she gave them to me, but I am not going to do it.' " This is sufficient in itself to sustain the judgment.

█ All the above evidence sufficiently supports the holding that all transfers were revocable and in trust during Mrs. Temps' lifetime. All evidence to the contrary given by appellants could only cause a conflict resolved by the trial court against appellant. █ Appellants' attack on the weight of Mrs. Temps' testimony as confused and conflicting cannot be reviewed by this court as the credibility of witnesses is solely for the trial court where no impossibility or inherent improbability is involved. █ There is no doubt that self-serving testimony of the donor or trustor is admissible as to the question whether a transfer was intended as a gift or a trust. █ Even hearsay evidence as to such declarations of the trustor or donor is admissible to show his or her frame of mind in that respect as an exception to the hearsay rule. (*Hansen* v. *Bear Film Co.*, 28 Cal.2d 154, 173 et seq. [168 P.2d 948]; *Casey* v. *Casey*, 97 Cal.App.2d 875, 879, et seq. [218 P.2d 842]; *Kelly* v. *Bank of America*, 112 Cal.App. 2d 388, 394 [246 P.2d 92, 34 A.L.R.2d 578]; *Emden* v. *Verdi*, 124 Cal.App.2d 555, 561 [269 P.2d 47].)

█ Appellants also attack the testimony of the attorney Fred Watkins. An attorney is competent to testify like any other witness. (27 Cal.Jur. 31.) "The propriety of a lawyer occupying the dual capacity of attorney and witness is purely one of legal ethics largely to be determined by the attorney's own conscience. While it is not a practice to be encouraged, it may often occur that conditions exist in which an attorney cannot justly or fairly withhold from his client either his legal services or his testimony as a witness." (*Hotaling* v. *Hotaling*, 187 Cal. 695, 709 [203 P. 745].) On appeal we must consider his testimony in support of the decision below just as we would any other evidence.

Appellants contend that the agreement of the parties with the bank provides that all funds deposited in the joint account will be held by the parties as joint tenants; that

therefore the parties necessarily had an equal interest in the funds so deposited and that the proceeds of said joint tenancy property retained the same character after Mrs. Temps had disposed of the original funds. The same rule is urged as to the contents of the joint safety box and the government bonds placed in the name of Mrs. Temps or appellant Frank. The contention is without merit. ■ It is true that if an actual and present joint interest is created, the withdrawal of the funds does not change the joint tenancy character unless there has been a change of the character by agreement of the parties. (*Wallace* v. *Riley*, 23 Cal.App. 2d 654, 665 [74 P.2d 807] ; *Fish* v. *Security-First Nat. Bank*, 31 Cal.2d 378, 387 [189 P.2d 10].) ■ However the agreement with the bank is not an incontestable proof of the intention to create a present joint interest notwithstanding, as in this case, all the funds had belonged to one of the parties.

■ Parol evidence remains admissible to show the intention and the ''realities of ownership.'' (*Paterson* v. *Comastri*, 39 Cal.2d 66, 72 et seq. [244 P.2d 902].) On the basis of the evidence stated the trial court could, as in the Comastri case, hold that there was no intention to make a gift of the funds in the account prior to Mrs. Temps' death. Although Mrs. Temps did not testify specifically as to each item in issue, the court could conclude from the general tenor of her testimony that she did not intend to part definitely with her property, which she thought she might still need in the ensuing years of sickness. This applies as much to property placed in the joint name of herself and appellant Frank as to property placed in his name alone. ■ The fact that the parties had rented a safe deposit box in joint tenancy does not establish a joint tenancy in the contents of said box. (*California Trust Co.* v. *Bennett*, 33 Cal.2d 694, 698 [204 P.2d 324].) ■ Neither does the placing of a second name on government bonds establish an intention of the former sole owner to restrict his or her power to dispose of the bonds during lifetime or to give the person whose name is placed second on the bond a present equal interest. It is of probative importance that Mrs. Temps did not wish this appellant to enter the joint deposit box which contained the bonds without her knowledge, that she asked for return of the key when the appellant did so, and that the key was returned to her, indicating an admission that this appellant had no present equal right to the contents of the box.

Appellant Frank testified that Mrs. Temps paid gift tax on all properties that she put in his name. Mrs. Temps did not recollect whether she had done so. The trial court in an opinion made part of the record states that it was not proved that gift taxes were paid as to these transactions, or that any gift tax return was filed. ■ The trier of fact may reject the testimony of an uncontradicted witness provided he does not act arbitrarily. (*Hicks* v. *Reis*, 21 Cal.2d 654, 659-660 [134 P.2d 788].) Relevant in that respect are many other things—the witness' interest in the result of the case, his motive, and contradictions appearing in the evidence. (*Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521].) ■ In this case this appellant's interest was evident; he had not been present when the tax allegedly was paid. The only supporting exhibits were blank return forms. He did not file a donee's return. Under these circumstances it cannot be said that the rejection of this appellant's testimony was arbitrary.

With respect to the Funston Avenue property, as to which the decision of the trial court was mainly favorable to defendants, they complain of the provision, to be contained in the deed conveying to Mrs. Temps a life estate in the flat she lived in, that the defendants should pay all real property taxes and repairs. According to section 840, Civil Code a life tenant must contribute to taxes and repairs in the manner there stated. No agreement freeing Mrs. Temps from such payments appears. She herself testified that she paid taxes and repairs. The deed should have provided for a proportionate contribution from Mrs. Temps based on section 840 and the consideration that her life estate was restricted to one flat only of the property.

Insofar as the judgment required the deed conveying a life estate to Mrs. Temps to contain a provision that all the real property taxes and the repairs affecting said real property should be assumed and paid by defendants and cross-complainants, the judgment is reversed with directions to amend said provision in accordance with our above decision. In all other respects the judgment is affirmed, appellants to bear the costs of the appeal.

Dooling, J., and Kaufman, J., concurred.